# WYLIE M. STECKLOW

## STECKLOW & THOMPSON

www.LawyersForTheRestOfUs.com

217 CENTRE ST. FL. 6
NEW YORK, NY 10013
T(212) 566-8000
F(212) 202-4952
WYLIE@SCTLAW.COM

March 31, 2016

The Honorable Judge Richard Berman
USDJ-SDNY
500 Pearl Street
New York, NY 10007
    Re:    Matter: <u>Gershkovich v. City of NY et al.</u>,
          Docket:    15CV7280 (RMB)(DF)

Dear Honorable Judge:

      Please remember that I am the attorney of record for Alex Gershkovich in the above-referenced action. I write today in response to Defendants' letter of March 25, 2016 ("letter"), seeking a motion schedule to dismiss claims in Plaintiff's First Amended Complaint ("FAC"). Plaintiff disputes Defendants' contention that their contemplated motion practice would be dispositive of Plaintiff's claims, and submits that these issues were either dealt with in the amending of the complaint[1] or are questions of fact more appropriately dealt with at the summary judgment stage of litigation.

    I.    <u>Constitutional Claim & Qualified Immunity</u> - The Defendants' proposed Rule 12(b)(6) motion cannot dispose of this case as Plaintiff properly alleges an unlawful arrest claim. Allegation of arrest without a warrant, by itself, is sufficient to state a claim for false arrest under <u>Broughton v. State</u>. *See Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, *16-17 (S.D.N.Y. 3/7/16)(Castel. J.)(citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975), *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) and *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. N.Y. 2003)).[2] The FAC alleges that Plaintiff was in a public place doing nothing wrong (specifically, standing and taking photographs of police activity) when he was arrested. (FAC ¶¶ 3, 5). To overcome the presumed illegality of this arrest, the Defendants will have to prove facts within the FAC that establish the existence of probable cause.

    Since these facts are not in the FAC, the Defendants seek to insert facts into the FAC while distancing themselves from the criminal complaint of Defendant CAPTAIN IOCCO, who falsely swore that he witnessed Plaintiff inside the lobby of 4 New York Plaza ("4NYP"). The defendants now argue that even if Plaintiff was outside 4NYP, the Plaintiff was on private property and therefore has 'admitted' to trespassing and could be arrested. The defendants do not, and indeed cannot, identify any specific allegation from the FAC to support this argument, because there is no factual support for this argument within the FAC. To the contrary, the FAC is quite clear that the Plaintiff was **outside** the building, using his camera to photograph events that were occurring inside the building. The New York Court of Appeals has interpreted the misdemeanor trespass statutes to require entry into a fenced or enclosed area. *See People v. Moore*, 5 N.Y.3d 725, 727 (N.Y. 2005) (interpreting Penal Law § 140.10 (a)). All forms of trespass, including the violation (Penal Law § 140.05) include the element of "unlawful entry or remaining." *People v. Graham*, 48 Misc. 3d

---

[1] The amending of the complaint removed at least one claim (excessive force) solely to avoid motion practice, even though it likely would have survived a motion to dismiss.
[2] The Second Circuit has held that a legal presumption "reduces the facts needed to be pleaded under *Iqbal*." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. N.Y. 2015) (referring to presumptions in the McDonnell Douglas Title VII framework).

1222(A) (N.Y. City Crim. Ct. 2015). There are no allegations in the FAC that the Plaintiff unlawfully entered or remained in the area in front of 4NYP.

Even if this Court were to allow the Defendants to introduce "facts" (really just attorney allegations) outside the pleading in order to support their dismissal arguments, the Defendants' arguments would be unavailing. The plaza and arcade (the area where Plaintiff was arrested) are public space required to be open 24 hours and are clearly not fenced in to keep intruders out. http://apops.mas.org/pops/127/ The public is authorized and welcome in this area, and cannot be charged with trespassing unless their right to be present has been lawfully revoked. Neither the FAC, the criminal complaint, nor the defendants make any allegations that the individuals outside 4NYP were given any orders, dispersal or otherwise. As such, the right to be in the location where Plaintiff was arrested was never revoked, and defendants cannot make out any legal argument that an officer had probable cause or arguable probable cause to arrest the Plaintiff.

The Defendants' arguments concerning whether photography of police is protected by the First Amendment are therefore something of a sideshow. Even absent First Amendment protection for photography, it cannot be argued that Plaintiff was **more** arrestable because he was taking pictures. Since the FAC states a claim for false arrest even if the Plaintiff's photography is ignored completely, it would make no difference if this Court determined that photography of the police were unprotected.

Yet, if this Court addresses the First Amendment issue, the Court should find that the Plaintiff's activity was protected. The Plaintiff is a citizen journalist/protestor, who regularly live-streamed Occupy Wall Street events, and at the moment preceding his arrest - was taking pictures of government agents arresting protestors against the government. The Plaintiff's photography was a political act, as well as an expressive one. The Supreme Court has said: "[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. 'All these, though not identical, are inseparable.'" *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Even cases that address photography of the police as purely an "expressive" act (as opposed to an act relating to the redress of grievances), have overwhelmingly tended to find that such expressive photography is protected. *See Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015) ("All of the circuit courts that have, however, have concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions.") (citing First, Seventh, Ninth and Eleventh Circuit precedents).[3]

To be clear, if the Court found that filming police was entitled to heightened First Amendment protection, or that its protection was in dispute, this would **not** result in a finding that the Defendant officers are entitled to qualified immunity, because it is clearly established that arresting the Plaintiff for standing in front of 4NYP while doing nothing wrong is unlawful. The Defendants will have to argue for qualified immunity at summary judgment based on facts they adduce in discovery. Cf. *Higginbotham v. NYC*, 105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227, 2015 WL 2212242 at *4 (S.D.N.Y. 2015) ("On a motion to dismiss, however, a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle . . . and is usually not successful.'") (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)).

Plaintiff's claim for false arrest will survive this second 12(b)(6) motion because the FAC makes out a prima facie case, and does not establish the defendants' affirmative defense.

---

[3] Moreover, at the time of Plaintiff's arrest, the top government attorneys believed this issue to be well-settled. On January 10, 2012, the United States Department of Justice filed an amicus brief stating that, "[t]he First Amendment protects the rights of private citizens to record police officers during the public discharge of their duties." *Sharp v. Baltimore Police Dept.*, 11-CV-02888 (BEL) (Docket entry #24, (last checked 3/30/16) can be found https://www.justice.gov/sites/default/files/crt/legacy/2012/04/12/Sharp_SOI_1-10-12.pdf.

II. *The Monell Pleadings*: The FAC Monell claims include a claim related to the official NYC policy that individuals have the right to film the police. Plaintiff claims that this policy was ignored by the NYPD, that the City was on notice that the NYPD interfered with individual's right to document police action, and that the City failed to institute proper training. The FAC relies upon four pillars of proofs to support this policy, including, (i) the Black v. Codd, 73CV5283(JMC) consent decree binding on the city since 1977 that sets out the rule the NYPD understood when it came to civilians filming the NYPD ((FAC ¶68); (ii) a finest message concerning the right of individuals to film and photograph the NYPD (FAC ¶¶69); (iii) the suppressing protest report (FAC ¶¶ 74, 140) and (iv) a recitation of over eighty (80) litigations related to Occupy Wall Street (FAC ¶¶ 143-44). If need be, the FAC could even be further amended to add in (v) the August 6, 2012 letter from the National Press Photographers Association to NYPD regarding multiple incidents of improper conduct by NYPD towards photographers (See exhibit 1) and (vi) identifying the specific lawsuits in paragraphs (FAC ¶¶ 143-44) that are related to individuals who were falsely arrested while documenting police action (such as *Reinhart and Eastman v. NYC, 13CV8314 (JPO) (Settled $40,000 (FAC¶143)*. Yet, in response to these four pillars of proof, the Defense trots out worn phrases, like this 40 page pleading with 165 paragraphs is devoid of facts. The Defense seeks to ignore the first three pillars of proof while trying to discount the fourth, the recitation of over 80 Occupy litigations, by citing *to Giaccio v. City of New York*, 308 Fed. Appx. 470 (2d Cir. 2009) for the proposition that "citations to lawsuits... does not give rise to liability." However, *Giaccio* cited to only four examples of lawsuits in support of that *Monell* claim. "In order to establish a section 1983 claim against municipal defendants, *Giaccio* must demonstrate that he has been deprived of a constitutional right as the result of an official custom or policy. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Yet he identifies, at most, only four examples where the defendants might have disclosed positive drug test results. This evidence falls far short of establishing a practice that is "so 'persistent or widespread'" as to justify the imposition of municipal liability. *See Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004))." Giacco v. *City of New York*, 308 Fed. Appx. 470,472 (2d Cir. 2009).

In fact these same attorneys filed a FRCP12(b)(6) motion to dismiss very similar pleadings supporting a similar *Monell* claim in Holmes v. City of NY, et al, 2016 U.S. Dist LEXIS 2794. In that opinion, the court ruled that these pleadings were sufficient. "The Second Circuit has recognized that a Plaintiff need not prove and document a failure to train at the pleading stage to state a claim for municipal liability under Monell, given the difficulties inherent in obtaining relevant facts absent discovery. See *Amnesty v. W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004)…Here, Plaintiff alleges that the City: (1) had an official policy precluding interference with individuals attempting to record or document police actions (an established Constitutional right under the First Amendment), but (2) failed to properly train police officers to ensure that those individuals would not actually be interfered with. Plaintiff alleges that the City was on notice that the NYPD was interfering with individuals' attempts to record or document police actions. Plaintiff's allegations suffice, at the pleading stage, to state a claim for Monell liability, and Defendants' motion to dismiss this claim is denied." *Holmes at *18-19*.

The Plaintiff has properly pled a false arrest claim establishing the underlying constitutional claim. The Monell pleadings are more than sufficient at this early stage of litigation.

*III. City Strategy of Litigate and Delay* - The current motion, on the heels of the prior motion, is no surprise. The City of New York has taken a delay approach to litigation in many lawsuits, especially in those relating to Occupy Wall Street. This leads to a strain on resources in the City Law Department, judiciary and 1983 Plaintiff's bar. In fact, Judge Castel recently issued a decision setting out the City Occupy defense team's penchant for filing multiple motions to dismiss in *Higginbotham II*, 2015 U.S. Dist. LEXIS 114773 (2015). "The City of New York did not succeed on its first *Rule 12(b)(6), Fed. R. Civ. P.*, motion in dismissing the false arrest and *First Amendment* retaliation claims. (Memorandum and Order of May 12,

3

2015.) It did not move to reconsider the Court's ruling. It would now, however, like a second shot at these claims on a renewed *Rule 12(b)(6) motion*" (*See also Gersbacher v. City of New York*, 2015 U.S. Dist. LEXIS 129994. *21, docket entries 30, 32-33, wherein the published opinion denied the first 12(b)(6) motion and the docket # 33 set a case management plan rather than allow a second 12(c) motion). The strain on litigation by unnecessary and frivolous motion practice is also seen within the New York City Law Department. In fact, in the Rule 12(b)(6)motion filed in this matter, the defense seeks to create a false issue, "[c]uriously, Plaintiff never states what he was arrested for..." (Docket # 51, page 2). However, such information was included in the initial pleading at paragraph 9, "when he was arrested and charged with two counts of trespass and one count of disorderly conduct." Unfortunately, this is not an isolated incident of city attorneys failing to treat the pleading with due care.

In footnote 3 of the March 25, 2016 letter of defendants, Defense cites to the *Packard*, 15CV7130 (AT) litigation and *Richardson* (15CV5775)(PKC) litigation. Consistent with the City strategy, both of these cases have FRCP12(b)(6) motions pending. In the *Richardson* motion, the defendants' sole argument for dismissal of the false arrest claim was that the pleading "admits" that the plaintiff was told to disperse. The Defendants cited a single paragraph plucked from the Monell pleading which referred to a dispersal order given to a different group of protestors, at a different location, two days previously. (Def. Mem. pp. 7-8). *Richardson* shows the City is willing to make an utterly baseless motion if it will impose costs on the plaintiff and delay litigation.

It is respectfully requested that the court deny the defendants the ability of filing yet another 12b6 motion and set down a date for an answer to be filed, while discovery continues forward.

Respectfully submitted,

Wylie M. Stecklow, Esq.

4