**WYLIE M. STECKLOW**
**STECKLOW & THOMPSON**

WWW.LAWYERSFORTHERESTOFUS.COM

217 CENTRE ST. FL. 6
NEW YORK, NY 10013
T(212) 566-8000
F(212) 202-4952
WYLIE@SCTLAW.NYC

August 9, 2016

**VIA ECF**
Hon. Judge Debra Freeman
Southern District of New York
500 Pearl Street
New York, NY 10007
       Re: <u>Gershkovich v. Iocco Et al 15CV7280 (RMB)(DCF)</u>

Dear Honorable Chief Judge:

      This letter is submitted updating the court on a dispute concerning interrogatories and requests for admissions served in this matter on June 3, 2016. On July 15, 2016, the defendants responded. Thereafter, the parties conducted a meet and confer, and certain discovery disputes were unable to be resolved. Contemporaneous with this letter, a correspondence concerning the discovery dispute specifically related to the arrest location, Four New York Plaza, designation as a privately owned public space, is being served and filed via ECF. This letter concerns issues arising from the interrogatory and requests for admission responses that are not specifically related to the POPS designation of Four New York Plaza.

      On or about March 15, 2016, plaintiff served a Rule 30(b)(6) deposition notice on defendant City of New York. The defendant objected in toto to the notice, and the parties were unable to resolve this issue. On April 1, 2016, the parties had a conference call with Your Honor concerning discovery issues. On April 12, 2016, plaintiff's counsel forwarded a discovery update letter to the court (Docket 66). On April 15, 2016, defense counsel filed a response (Docket 67). On May 9, 2016, this court issued an order (Docket 68) ordering the City to designate and produce Rule 30(b)(6) witness to parts 1, 3 and 5 of the March 15, 2016 deposition notice. The court also ruled that,

The City also need not designate an individual to testify about the matters described in Part 4 of the Rule 30(b)(6) Notice, as this Court finds that discovery regarding those matters would be more efficiently conducted through interrogatories. Accordingly, if he has not already done so, Plaintiff may serve interrogatories on the City seeking the information described in Part 4. The City is directed to answer any such interrogatories to the extent of its ability, and may assert lack of knowledge as the reason for any failure to answer only after making reasonable inquiry and stating that it has done so.

On June 2, 2016, the plaintiff served the supplemental interrogatories related to this Part 4. On July 15, 2016, the City responded (See Exhibit A which sets out both the demands and responses). Thereafter, the parties had a meet and confer that did not resolve all of the outstanding issues. The areas of dispute are set out into a few distinct sub-parts set out below.

1. Seeking to identify the defendant NYPD Officers and other witnesses present, during the plaintiff's arrest time, either inside and/or outside 4 New York Plaza; and their knowledge of plaintiff's location and conduct leading to arrest.
   Interrogatory 1, 2, 3, 4, 5, 6,
   RFA 1, 2, 25, 26, 27, 28, 29, 30, 31, 32, 33,

2. Dispersal Announcements or other orders to disperse generally and/or to plaintiff; and defendants and their identified witnesses' knowledge of plaintiff having received such orders.
   Interrogatory 10, 11, 12, 13,
   RFA 3, 4, 7, 9,

3. Misc:
   a. Alleged blocking of the doorway by plaintiff
      Interrogatory 15(a)

   b. Crimes which defendants believe they could charge plaintiff on date of arrest
      Interrogatory 16

4. POPS Designation and whether outside area was opened or closed to public
   Interrogatory 9, 17, 19
   RFA 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22,

The City of New York has not satisfied the court's order (docket 68) in responding to this discovery. As an example, in response to **Interrogatory 2 that** seeks the name of each NYPD officer present in the enforcement action taken at 4 New York Plaza on the date of arrest, the City of New York sets forth boilerplate objections and states that it has taken no further inquiry to uncover this information than previously disclosed.

Initially, it must be highlighted that in response to several interrogatories defendants made conclusory and baseless boilerplate objections. For example, responding to **Interrogatory 10,** the City inexplicably objects to this request as "vague, ambiguous, overbroad, **not limited in time and scope**, calls for a legal conclusion, and to the extent that it seeks information that is not within defendants' possession, custody or control." (emphasis added). This objection, **not limited in time and scope**, is utilized by the defendants in responding to numerous interrogatories that are specific to the arrest date of September 17, 2012 and the arrest location of 4 New York Plaza. *See Interrogatories* 9, 10, 11, 12, 13, 14, 19.

In certain responses to interrogatories, the City responds to interrogatories that were not posed. As an example, **Interrogatory 10** asks whether an announcement was made in the area outside the entrance to 4 New York Plaza (where plaintiff was arrested) prior to plaintiff's arrest restricting the right of citizens to be present in the area. In response, the defendants make boilerplate objections, and then state, "James Klein and other security officers from 4 New York Plaza attempted to remove individuals from their property before requesting police assistance." **Interrogatory 12** seeks to identify any person the defendants contend ordered plaintiff to leave 4 New York Plaza prior to his arrest. In response, after boilerplate objections, the defendants state, "James Klein and other security officers from 4 New York Plaza ordered individuals to leave the property prior to plaintiff's arrest on September 17, 2017."(sic)

Each time plaintiff seeks to narrow the witnesses with relevant information, the defendants often respond generally. **Interrogatory 13** asks the defense to identify the person or people that ordered the plaintiff to leave 4 New York Plaza's plaza area prior to his arrest (and **Interrogatory 14** asks the same of 4 New York Plaza's arcade area). In response to both interrogatories, the defense sets out "Security personnel, to include

James Klein, ordered plaintiff to leave Four New York Plaza's plaza (arcade) area prior to his arrest." By setting out an answer to include the vague term 'security personnel' the defense are not specifically responding to the interrogatory and plaintiff is unable to determine who, if anyone, in addition to James Klein will need to be deposed. Upon information and belief, the defense did not speak with James Klein in preparing the responses to these interrogatories or requests for admissions.

In at least two interrogatories, the defense has answered too generally when a more precise answer is possible. **Interrogatory 15 and subpart (a)** asks the city to identify who can testify from personal knowledge that plaintiff was blocking the doorway at 4 New York Plaza, and to identify the nine individuals with whom plaintiff is alleged to have blocked the doorway of 4 New York Plaza.[1] In response they state, "there is no information that is responsive to this request other than the information recounted by former officer Eddie Russell." This response is not clear if it is to 15, 15(a) or 15 and 15(a). The City should supplement this response.

**Interrogatory 16** asks the defense to identify each crime or offense it contends there was probable cause to arrest plaintiff on the arrest date. In response, the city identifies criminal trespass, trespass and disorderly conduct. There is no distinction of Criminal trespass in 1st (140.17, 3 subsections) 2nd (140.15, 2 subsections) or 3rd (140.10, 7 subsections) degree; or which of the 7 subsections of disorderly conduct are being identified. The City should supplemental this response.

In reviewing the defense responses to the requests for admissions, plaintiff does not believe the responses are limited, and often seek to utilize nuanced responses rather than straightforward answers. "Under Rule 36(a), a party cannot entirely deny a request because part of it is believed to be untrue. The Rule specifically provides that: A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny [**16] only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny

---

[1] This allegation only appears in arrest forms filled out by arresting (and retired) officer PO Eddie Russell who testified that (i) he did not witness any conduct by plaintiff (Russell Depo @ 99-100, 104, 134), and (ii) his arrest reports were based on notes he took in his memobook (Russell Depo @ 99), and (iii) upon his retirement he left his memobook in his locker and he believes it to be destroyed (Russell Depo @ 39-40).

the remainder." Apex Oil Co. v. Belcher Co. of N.Y., 855 F.2d 1009 (2d Cir. N.Y. 1988). In seeking to narrow discovery, plaintiff has drafted the following interrogatories directly related to the responses of the requests for admissions.

1. Identify which of the named defendants can testify on personal knowledge that Plaintiff was inside 4 NYP prior to his arrest on 9/17/12. **(See RFA 1).**

2. Identify by name, which witness can testify on personal knowledge that Plaintiff was inside 4 NYP prior to his arrest on 9/17/12. **(See RFA 2).**

3. Identify which of the named defendants can testify on personal knowledge that Plaintiff was given a vacate order inside 4 NYP prior to his arrest on 9/17/12. **(See RFA 3).**

4. Identify by name, which witness can testify on personal knowledge that Plaintiff was given verbal instruction inside 4 NYP prior to his arrest on 9/17/12. **(See RFA 4).**

5. Identify which of these defendants can testify on personal knowledge that Plaintiff was given warning or instruction to vacate area outisde 4 NYP prior to his arrest on 9/17/12. **(See RFA 7).**

6. Identify by name, which witness can testify on personal knowledge that Plaintiff was given verbal instruction to vacate the area outside 4 NYP prior to his arrest on 9/17/12. **(See RFA 9).**

7. Identify how PO Eddie Russell obtained the information that he wrote in GERSHKOVICH 000831 and specifically identify which individual provided this information to PO Russell and who can testify that this was how PO Russell obtained this information. **(See RFA 25, 26).**

8. Identify specifically which part of GERSHKOVICH 000825-000828 , DEFENDANT CAPTAIN IOCCO remembers witnessing. **(See RFA 28).**

9. Identify each and every source for the information DEFENDANT CAPTAIN IOCCO provided in the criminal complaint he swore to, GERSHKOVICH 000825-000828. **(See RFA 29).**

10. Other than the criminal complaint sworn to by DEFENDANT CAPTAIN IOCCO, identify all sources of information for CAPTAIN IOCCO's statements contained in the criminal complaint identified as GERSHKOVICH 000825-000828.

11. Identify each and every interaction DEFENDANT CAPTAIN IOCCO recalls with plaintiff on September 17, 2012. **(See RFA 30).**

12. Identify each and every interaction PO EDDIE RUSSELL recalls with plaintiff on September 17, 2012. **(See RFA 31).**

13. Identify the hours that the privately owned public space at 4 New York Plaza designated as the arcade were required to be open to the public on 9/17/12. **(See RFA 22).**

Wherefore, it is respectfully requested that pursuant to Rule 37, this court (i) set a court date to review the defendants' responses to the June 2, 2016 discovery demands, and (ii) provide a date certain for the defendants to respond to these interrogatories.

Respectfully submitted,

--//s//--

Wylie Stecklow