**WYLIE M. STECKLOW**                                      WWW.LAWYERSFORTHERESTOFUS.COM

**STECKLOW & THOMPSON**                                     217 CENTRE ST. FL. 6
                                                           NEW YORK, NY 10013
                                                           T(212) 566-8000
                                                           F(212) 202-4952
                                                           WYLIE@SCTLAW.COM

September 14, 2016

VIA ECF
Hon. Chief Magisrtate Judge Debra Freeman - SDNY
New York, NY 10007

      Re:    Matter:   *Gershkovich v. Iocco*
               Index:  15CV7280 (RMB)(DCF)

      The plaintiff in this action was arrested on a piece of property – a plaza and arcade -- that has been permanently dedicated to public use, and which zoning regulations require to be open to the public twenty-four hours a day, seven days a week, three hundred sixty five days a year.  While title to the property remains in private hands, the plaza and arcade are functionally equivalent to a public park.  This kind of publicly-dedicated land is called a "privately owned public space," or "POPS."  Privately owned public spaces are common in New York City, because property owners exchange them for waivers of zoning limitations such as height restrictions.

      Because the zoning regulations require the property owner to maintain the plaza and arcade to be open to the public **at all times**, it is impossible, as a matter of law, for anyone to "trespass" on the plaza and arcade at 4 New York Plaza unless there is evidence that those that remained knew their license to be present had been revoked.[1] *See Meyers v. City of New York*, 2015 U.S. Dist. LEXIS 145847, *21-22 (S.D.N.Y. Oct. 27, 2015) (citing N.Y. Penal Law § 140.05).  Therefore, once the fact is established that the plaza and arcade where the plaintiff was arrested is, in fact, a POPS required to be open 24/7/365, the defendants' "trespass" theory evaporates.  The defendants cannot prove the plaintiff knew his right to be present had been revoked as there is no evidence whatsoever that any defendant or defense witness gave orders to disperse, or witnessed anyone giving orders to disperse, to individuals present in the arcade or plaza area prior to the plaintiff's arrest.

      Among the knowing misrepresentations the defense has now made to this court includes the defense insistence that whether the plaintiff was arrested in a 24/7/365 POPS is a pure matter of law, and not a fact question. There are at least two obvious fact questions which need to be established.  First, whether a property is a POPS (and where

---

[1] Even where a property owner has not forfeited its right to exclude the public, the Penal Law is very clear: "A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." *See People v. Leonard,* 62 N.Y.2d 404, 408 (1984).  Where zoning regulations require private property to remain open to the public 24/7/365, the owner cannot issue a lawful order not to enter or remain.  *Cf. People v. Leonard,* 62 N.Y.2d 404, 408 (1984).  There can be no trespass.

its precise boundaries are) is a question of fact.  Second, Regulation 37-727, which controls hours of operation for a POPS provides: "**All** public plazas shall be accessible to the public at **all** times, **except** where the City Planning Commission has authorized a nighttime closing, pursuant to the provisions of this Section." (emphasis added). Whether the City Planning Commission ever approved a variation on the default rule that the POPS must be open 24/7/365 is also a question of fact.  Once those two questions of fact are established, it is indeed a very simple question of law to determine whether a particular POPS was required to be open 24/7/365 or not.   However, without first establishing the predicate facts, it is impossible to determine the question of law.

      Another knowing misrepresentation of the defense has been that they have never disputed this area as a POPS area.  Up until they were provided with the Gershkovich Bates 835-871, they had refused to recognize the area as a POPS.  Even after that production, the defense continued to refuse to acknowledge the area as a pops.  (See deposition of date witness).    I know this plaza and arcade is a POPS for several reasons. I have been to the location, and its status is visually obvious.  This Court can note, for a further example, that a NYC.gov webpage says that this plaza and arcade is a POPS.[2]   I have submitted an email confirmation from Professor Jerrold Kayden.  However, I cannot testify, and the Kayden email and/or the printout of a website might not admissible evidence to present to a jury.  I need one of two things to prove the facts relating to this issue, either: 1) an admission from the defendants that the plaza and arcade are, in fact, a POPS required to be open 24/7/365; or 2) admissible documentary evidence, such as certified records from the City Planning Commission establishing the zoning status of this property as a 24/7/365 POPS.

      I asked the defendants' witnesses for this information but they lacked the knowledge. I submitted interrogatories and requests for admissions for the necessary admissions.[3]   The defendants refused.  There has never been any ambiguity about the zoning status of the plaza and arcade as a 24/7/365 POPS.  There has never been any good faith basis to refuse to admit to this fact.  Nevertheless, the defendants refused to admit to these facts, forcing plaintiff to engage in further discovery including meet and confers, subpoenas, letters to the court, drafting and serving a 30b6 notice .

      Even after much discussion and once the defendants finally agreed to modify some of their responses to the requests to admit relating to this topic, they have failed to do so for almost 60 days (and with only 30 days left in discovery, this delay is prejudicial and harmful). To emphasize: there has never been any good faith basis for the City to refuse these admissions.

      Because the City of New York refused to admit to the necessary facts, I have been forced to seek documentary evidence of the location and zoning status of the 24/7/365 POPS plaza and arcade.

---

[2] See http://www1.nyc.gov/assets/planning/download/pdf/plans/pops-inventory/pops-inventory.pdf.  I also confirmed this with Professor Jerold Kayden, the author of *Privately Owned Public Space: The New York Experience*, a comprehensive study of POPS in New York that coined the phrase, privately-owned public space.

[3] See Plaintiff's Demands dated June 2, 2016, Interrogatories 17-19, RFAs 11-22.

The City failed to comply in good faith with my discovery demands relating to this issue. Such records are maintained by the City Planning Commission. In their present letter, counsel for the defendants refer to the City Planning Commission as their "client." If so, then counsel for the defendants have failed – for months – to ask their "client" for relevant, easily locatable documents which would establish the invalidity of the defendants' supposed trespass defense. The defendants have never had any good faith basis to withhold or fail to identify such documents. They are not privileged, this information was requested and made relevant by the defense position asserting a trespass theory for arrest and refusing to acknowledge the POPS status of this area. I attach a subpoena to the New York City Law Department to disclose their communications with the New York City Planning Commission, and any other individual or entity they sought information related to POPS, so we can fully understand when they began communicating and the efforts made to comply with discovery related to this simple issue. (See Exhibit A).

Counsel for the defendants' only possible excuse for failure to comply with these demands might be that they were ignorant of the fact that such documents existed. This is an incredible excuse, for several reasons. First, I told them that such documents existed, and later told them where they could be found. Second, the Office of Corporation Counsel has a Commercial and Real Estate Litigation Division, whose attorneys could no doubt point counsel for the defendants in the right direction. Finally, if it is true that counsel for the defendants consider the City Planning Commission to be their "client" in this litigation, then they cannot claim to be ignorant of the knowledge the City Planning Commission possesses.

In fact, the defendants characterize the City Planning Commission as their "client" solely for the purpose of insinuation that it was improper for me to contact the City Planning Commission to begin with (leaving aside the defendants' false claim that I misrepresented my identity that I address in a distinct letter). It is **not** the case that representing a plaintiff in a lawsuit against the City bars an attorney from speaking to any City agency about anything related to the case. As one example, the first phone call made in police misconduct cases after filing a complaint is to the NYPD verifications unit to locate the current assignment of each named police officer. Additionally, plaintiff's counsels routinely request medical records from City hospitals after the commencement of a lawsuit against another City agency. Attorneys routinely submit FOIL requests. Attorneys call 311. It is not uncommon for City attorneys to tell me, in essence, "get it yourself," when I request information in a police misconduct case which is not in the custody of the NYPD.

Had counsel for the defendants simply performed their obligations to provide informed and truthful responses to the notices to admit, and identified the appropriate documents, and produced the certified copies of the documents subpoenaed requested, this entire issue could have been settled quickly and with little fuss. Without a good faith basis for doing so, however, the defendants failed to perform these obligations.

It is not only incredible that the City Planning Commission does not know what the dimensions of the 4 New York Plaza POPS are, or whether the City Planning Commission has approved a variance from the 24/7/365 default rule, it is false. And it is

3

known to be false because Plaintiff subpoenaed documents from the New York City Planning Commission.   (See Exhibit B).

However, these documents were not certified, nor provided directly by the New York City Planning Commission.  It is not enough for the defendants to provide a map and say they "believe" it is accurate.  The attorney's believe is not admissible evidence unless it takes the form of an admission or stipulation.  I have tried notices to admit, and that has failed to resolve this issue because the defendants failed to respond in good faith with truthful admissions.  I have tried discovery demands and a subpoena, and I have not received the certified records documenting the necessary facts which I require.  The court can resolve this issue with a ruling deeming this 'believ' to be an admission by the defendants that the location was a 24/7/365 POPS which was open to the public at the time of arrest.

### *Issue 4: Unavailable Witnesses[4]*

A very similar problem has kept the issue of the other police witnesses from being resolved.  Counsel for the defendants have orally told me that they don't intend to call certain witnesses and they don't have knowledge (Sgt. Brown, Defendants Bautista and Cross).  However, when I have asked them to stipulate to that fact, they have refused. (See Exhibit C: emails and stipulation dated May 2016 related to Sgt Woods.).  Simply put, I cannot rely upon the representations of these attorneys – without a stipulation – about not calling these officers as witnesses.  Since their refusal to stipulate raises the possibility that these witnesses will be called, I have to continue to treat these witnesses as individuals who may be called at trial.  This is an issue, however, where this Court can act to resolve the issue.  Because counsel for the defendants' are currently representing **to this Court** that they do not intend to call these witnesses, and are asking this Court to issue rulings on the strength of those representations, the Court can, and should, issue an order barring the defendants from calling any of these individuals at trial, or from using any statement of any kind by them at summary judgment.  This includes Sgt Brown, PO Bautista and PO Cross.

Another knowing misrepresentation made to this court is that plaintiff has done nothing to locate the missing witness James Klein. As defendant knows, plaintiff subpoenaed Mr. Klein for a deposition on August 16, 2016.  (See Exhibit D subpoena and affidavit of service).  Defense counsel appeared for this deposition in my office.  Plaintiff has also sought to locate Mr. Klein through various internet and acurint searches. Plaintiff has contacted carney security, but not surprisingly, there has been not cooperation in connecting plaintiff's counsel to Mr. Klein by 4 New York Plaza, Carney Security or the defendants.  Absent Mr. Klein being made available as a witness, the defense should be barred from introducing any documentary evidence of statements by Mr. Klein.

### *Defendants' Discovery Misconduct*

---

[4] Please see Exhibit G for a response to the defense letter regarding all other issues.

The defendants misconduct in discovery has not always been brought to this court's attention. The record, however, should be made clear:

1. Plaintiff noticed a 30(b)(6) witness to testify concerning the *Black v. Codd* federal consent decree. The witness arrived at the deposition without having reviewed or even seen the consent decree. (See Exhibit E, deposition transcript of City of New York, at page 45);

2. Plaintiff noticed a 30(b)(6) witness to testify concerning the training received by defendant officers. The witness appeared without having reviewed any records of the training of these officers. (See Exhibit E, deposition transcript of City of New York, at 139-146);

3. As set forth above, defense counsel agreed on July 18, 2016 to change RFA's 11 & 12, but as of September 13, 2016 have failed to do so;

4. The defendants were obligated to identify the John Doe defendants including Sergeant Derrick Brown. They were in possession of photographs and video showing officers involved in the arrest since December 11, 2015, and whose names were also demanded in interrogatories dated February 3, 2016.[5] Defendants first identified Sgt. Derrick Brown on May 23, 2016. Defendants first asked the arresting officer, PO Russell, to view the images to identify officers on or about May 1, 2016. On May 19, 2016, PO Russell was shown the photograph in his deposition and he identified Sgt. Brown. He stated that nobody from the New York City Law Department had contacted him about this case prior to a couple weeks before his deposition. (See Exhibit F PO Russell deposition pages 99-07). So even though the defendants had an obligation to identify the john doe defendants in a timely fashion, they failed to show a photograph of the john doe defendants to the arresting officer until eight months after the lawsuit was filed.

5. Moreover, even though the identify of each police office inside and outside 4 New York Plaza within an hour before and after this arrest had been requested in the interrogatories served on February 2, 2016, and ordered by this court after a discovery dispute on ___, the defense failed to conduct an appropriate review of the detail logs that would identify all officers. During PO Russell's deposition, it became obvious that the production made in relation to identify each officer at 4 New York Plaza was insufficient as PO Russell's name and those of the officers on his team present in and around 4 New York Plaza did not appear in any of the detail logs produced. (See Exhibit F PO Russell

---

[5] Interrogatory #4. Identify EACH AND EVERY police officers present inside the lobby of the commercial building within one hour prior, and thirty minutes subsequent to the plaintiff's arrest. Set forth separately their names, shield numbers, tax ID numbers, commands on the date of the incident, current commands, and supervisors on the date of the incident.
Interrogatory #5. Identify EACH AND EVERY police officers present outside the lobby of the commercial building, within one block of this commercial building, within one hour prior, and thirty minutes subsequent to the plaintiff's arrest. Set forth separately their names, shield numbers, tax ID numbers, commands on the date of the incident, current commands, and supervisors on the date of the incident.

        deposition transcript 86-87).   In fact,.  Thereafter, the defense produced the detail log for PO Russell's team, but no other.

6.     As a further example of defendants delay in this matter, this Honorable Court sought to schedule a discovery telephone conference for 11:00am on August 19, 2016. Although the defense lists three attorneys on the docket, and a fourth had previously participated in a court conference call on this case, the defendants would not agree to make any attorney available for the call.  The city counsel knew the undersigned would be out of the office the following week.  Their refusal to participate in the discovery call has benefited the defendants as those discovery issues remain open, cutting in half the time that is left in discovery.

7.     Prior to responding to the June 2, 2016 discovery demands including the Request for Admissions, the defense should have spoken to the NYC Planning Commission.  They did not and their responses to that discovery is incomplete based upon their failure to properly investigate.

8.     In the September 12, 2016 letter to the court, the defendants state that "James Klein called the police to ask for assistance." Yet, no sprint or 911 tape has been disclosed of this alleged phone call, even though a document demand was made for it on February 3, 2016.[6]

    The defendants should be sanctioned for their failure to comply with the mandates of this Court and the Federal Rules.  Defense counsel has an obligation to actively supervise retention and search efforts in discovery. *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.")(citation omitted) (collecting cases). *See generally Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008) (discussing attorneys' obligations under Rule 26(g), including signature certifying that that to the best of the attorney's knowledge, information, and belief formed after a reasonable inquiry, the disclosure is complete and correct at the time made).

    Fed. R. Civ. P.  37(c) provides for sanctions where a party fails in its obligations to supplement or amend responses to interrogatories, demands for the production of documents and/or requests for admissions.  *See Haas v. Del. & Hudson Ry. Co., 282 Fed. Appx. 84,* 85-86 (2d Cir. 2008).  Further, "[t]he imposition of sanctions under Rule 37 is necessary to discourage dilatory tactics and to avoid a situation where compliance with discovery orders comes 'only when the back of counsel and the litigants [are] against the

---

[6] Document Demand #3. Recordings of all calls, including but not limited to all 911 tapes, radio run recordings, radio reports, radio to radio transmissions, radio to base transmissions, SPRINT runs and any other kind of recording, and any materials, reports, print-outs, and documents or the written counterparts of these tapes and materials concerning the incident, including but not limited to any calls made to or from any precinct house, dispatcher, police officers, or "911," or New York City Police Department communications operator regarding Plaintiff and/or the incident giving rise to the instant action.

wall.'" *John v. City of New York*, 11 CV 5610 (RPP), 2012 U.S. Dist. LEXIS 94752, *19-20 (S.D.N.Y. July 8, 2012) (citing *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989)). Rule 37 "provides that the court may impose a range of sanctions, including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs. *Fed. R. Civ. P. 37(b)"* Green v. McClendon, 262 F.R.D. 284, 288 (S.D.N.Y. 2009)(string cite omitted).  In addition, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Id. *Citing, Residential Funding, 306 F.3d* 99, *at 106-07 (2d Cir. 2002)*. (citations omitted).

      The last time plaintiff wrote to the court, the plaintiff had two months remaining in discovery.  Since then, defendants have produced no further discovery and made no changes to its discovery responses.  Plaintiff now writes to the court with just one month of discovery remaining.

      I remain,

Very truly yours,

--/s/--

Wylie Stecklow