15 CV 07280 (RMB) (DCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEX GERSKOVICH,

                                                Plaintiff,

                 -against-

MARK IOCCO, THE CITY OF NEW YORK, STEVEN ANGER,

                                                Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y.  10007*

    *Of Counsel Joy Anakhu*
    *Tel:  (212) 356-2323*
    *Matter No. 2015-043847*

i

# **TABLE OF CONTENTS**

**ARGUMENTS**

    **PLAINTIFF'S ATTEMPT TO IGNORE THE FACTS WHICH JUSTIFY HIS ARREST IS INSUFFICIENT TO DEFEAT THE MOTION FOR SUMMARY JUDGMENT** ............................................................................. 1

    **PLAINTIFF'S FABRICATION OF EVIDENCE CLAIM IS BASELESS AND LEGALLY INDEFENSIBLE** ...................................................................................... 4

    **PLAINTIFF'S FIRST AMENDMENT RETALIATION THOERY IS WITHOUT MERIT** ................................................................................................... 5

    **PLAINTIFF HAS FAILED TO ESTABLISH THE PERSONAL INVOLVEMENT OF CHIEF ANGER.** ............................................................................................. 8

    **PLAINTIFF'S PERFUNCTORY ARGUMENTS CONCERNING HIS MUNICIPAL LIABILITY THEORY CANNOT OVERCOME ITS DISMISSAL.** ........................................................................................ 8

**CONCLUSION** ................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**
Bogart v. City of New York, 2015 U.S. Dist. LEXIS 11331, *14 (S.D.N.Y. Aug. 25, 2015). ...... 6
Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. 2016) ...................... 10
Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280, at *6 (S.D.N.Y. Mar. 31, 2016) 2
Carpenter v. City of New York, 984 F. Supp. 2d 255 (S.D.N.Y. 2013) ...................................... 10
Depew v. City of New York, 15-cv- 3821, ECF No. 31 pg. 8 (September 30, 2016). ................... 5
Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) .................................................. 10
Febres v. City of New York, 238 F.R.D. 377, 389 (S.D.N.Y. 2006) ............................................. 7
Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (2000) ....................................................... 7
Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) ........................................................................... 10
Garnett v. Undercover Officer C0039, 838 F.3d 265, 268 (2d Cir. 2016) ................................... 5
Gem Fin. Serv. v. City of New York, 2014 U.S. Dist. LEXIS 34770, at *34 (E.D.N.Y. Mar. 17, 2014). ........................................................................................................................................ 4
Gonzalez v. City of New York, 2015 U.S. Dist. LEXIS 151810, at *19 (S.D.N.Y. Nov. 9, 2015) 6
Higginbotham v. City of New York, 105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y 2015) ......................................................................................................................... 6
Keith v. City of New York, 2014 U.S. Dist. LEXIS 166469 (S.D.N.Y. Dec. 1, 2014) .................. 5
Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515 (S.D.N.Y. 2014) ................ 1, 4, 10
Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *1 (S.D.N.Y. 2014). ............... 2
Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *10-11 (S.D.N.Y. Feb. 24, 2014) ........................................................................................................................................ 3
Mediavilla v. City of New York, No. 14 CV 8624-VSB, ECF No. 91 ....................................... 10
Mediavilla v. City of New York, No. 14 CV 8624-VSB, ECF No. 91(SDNY September 29, 2016) ...................................................................................................................................... 10
Mesa v. City of New York, 2013 U.S. Dist. LEXIS 1097, at *74-75 (S.D.N.Y. Jan. 3, 2013) ...... 6
Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted) ............................................. 3
Pesola/Allen v. City of New York, 2016 U.S. Dist. LEXIS 42977, at *1 (S.D.N.Y. Mar. 30, 2016) ...................................................................................................................................... 10
Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134, at *20 (S.D.N.Y. Mar. 31, 2015) .... 6
Prince v. County of Nassau, 563 Fed. Appx. 13, 16 (2d Cir. 2014) ............................................. 9
Romero v. County of Lake, 60 F.3d 702, 705 (10th Cir. 1995) .................................................... 7
Swartz v. Insogna, 704 F.3d 105 (2d Cir. 2013) ........................................................................... 4
Thimmesch v. City of New York, 12 cv 8882 (KBF), 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013) ........................................................................................................................................ 4
Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013) ................ 1, 10
Torres v. Dennis, 2013 U.S. Dist. LEXIS 83421, at *12-13 (E.D.N.Y. 2013) ............................. 7
Wiles v. City of New York, 13 CV 02898, (TPG) ECF No. 161(same); Hessler v. City of New York, No. 13 Civ. 821 (NRB) (SDNY) ................................................................................. 10
Wiles v. City of New York, 13 CV 02898, (TPG) ECF No. 161(SDNY October 25, 2016) ....... 10

**PLAINTIFF'S ATTEMPT TO IGNORE THE FACTS WHICH JUSTIFY HIS ARREST IS INSUFFICIENT TO DEFEAT THE MOTION FOR SUMMARY JUDGMENT**

Plaintiff does not deny that he was on private property when he encountered Captain Iocco. In fact to get to this location, plaintiff used the staircase leading up to 4NYP's plaza and stood between two pillars prior to his arrest. See Anakhu, Dec. Ex. L¶¶19-20; Defendants' 56.1 ¶¶68, 69, 76, 77. The indisputable evidence in this case makes it clear that probable cause, or at least arguable probable cause, existed to arrest plaintiff as he remained, without lawful authority, on private property owned by 4 NYP. Despite being confronted with these facts, plaintiff attempts to circumvent dismissal by urging this Court to strike the affidavit of 4NYP property manager, Michael Clarke.

Plaintiff falsely asserts that Mr. Clarke's affidavit conflicts with prior admissions made by the City. This is simply untrue; it is undisputed that the building and the surrounding area where plaintiff was arrested is privately owned and maintained by 4 NYP. See Anakhu Dec. Ex. L ¶¶17-20; Ex. P, See also Wile Dec. ECF No. 150, pg. 11 (noting 4 NYP, included its plaza and arcade are privately owned). Nonetheless plaintiff's misinformed argument is that because a section of the property is designated as a "POPS", the court should reject Mr. Clarke's affidavit. As a preliminary matter, Defendants note that plaintiff spends an inordinate amount of time using the term "POPS" but fails to outline its meaning or how it's even relevant to his claim; therefore forcing the Court and defendants to self-decipher its significance.

Plaintiff apparently does this strategically because it is well-known that Courts in this district have found probable cause to arrest for trespass even in privately owned public spaces ("POPS"). See Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013); Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515 (S.D.N.Y. 2014). It is also recognized that private owners of areas designated as "POPS", are responsible for creating rules for that location as well as its management and upkeep. See Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280, at *6

(S.D.N.Y. Mar. 31, 2016); Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *1 (S.D.N.Y. 2014). Mr. Clarke affirms this when he notes in his affidavit that 4NYP owns and maintains its property. See Anakhu Dec. Ex. L, ¶¶17-20. Defendants point out that plaintiff has provided no evidence to refute these statements other than to baselessly object.  Apparently aware that Mr. Clarke's personal knowledge about the events on September 17, 2012 further support defendants' motion for summary judgment; plaintiff next argues that Mr. Clarke's affidavit should be stricken because he is an "expert" that is making "legal conclusions". This is utterly absurd. Mr. Clarke is a fact witness that has worked at 4NYP for thirty years and as its property manager, has personal knowledge as to the property's ownership and maintenance responsibilities. See Gordon v. Kaleida Health, 299 F.R.D. 380 (W.D.N.Y. 2014) ("[The] Rule simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment."); See also Gordon v. Kaleida Health, 299 F.R.D. 380 (W.D.N.Y. 2014). See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013) (holding submission in opposition to (or in support of) summary judgment need be considered only to extent that it would have been admissible at trial). Further Mr. Clarke's affidavit is neither hearsay nor a legal conclusion and should be considered by the Court. See Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(c)(2) in stating that, in ruling on motion for summary judgment, court may rely on any material that would be admissible at a trial).

Additionally, despite plaintiff's utter failure to explain the relevance of a "POPS" as to his claims in this case; defendants assert that the designation as a "POPS" does not change the analysis of whether probable cause or qualified immunity exists. Mr. Clarke makes it clear that at no time did OWS demonstrators, including plaintiff, have a "license" or were "invited" on to 4NYP property. See Anakhu Dec. Ex. L ¶¶15, 16.  Contrary to plaintiff's assertions, there is no ambiguity as to Mr. Clarke's meaning of the word "property". His meaning includes both inside and outside of the building. Id. ¶¶12-

14. Further 4NYP was well aware that they would be targeted by OWS on September 17, 2012[1]. Therefore security personnel formulated a security plan in preparation of it. See Anakhu Suppl. Dec. Q 91:7-92:9. Part of this preparation included adding additional security, placing barriers outside its building, and vetting as well as challenging people as they came and asking whether they were tenants, visitors, or have other business at 4NYP. Id. 92:14-24. That was the first time that 4 NYP had to take such measures to protect itself. Id.

Further contrary to plaintiff's assertions, protestors were warned by security personnel that they were trespassing Id. 94:9-13. After several warnings, 4NYP called the police. Id. 95:5-7. Plaintiff does not dispute that he was one of nine people arrested at 4NYP on September 17, 2012. See Plaintiff counter statement ¶92. Further he cannot dispute that Security Director, Jim Klein saw each of the nine individuals that were taken into custody and swore that these individuals, including the plaintiff, did not have "permission and authority" to be there. Id. 103:3-20. Therefore, whether plaintiff intended to trespass or later had a defense to his arrest, this does not negate the fact that officers had sufficient information giving rise to probable cause for plaintiff's arrest. The fact plaintiff assumes, without evidence, that others around him, including an "African-American woman wearing a neon green hat" (Pl's Opp. pg. 12) were not arrested, also does not negate probable cause to arrest plaintiff. Finally plaintiff complains that no one at 4NYP told him to leave the property; however as cited in Lebowitz, "even if the security [director] somehow lacked authority to tell [protestors] to leave, and even if the security [director] had never even told the [protestors] to leave, the police were nevertheless entitled to rely on the security [director's] representation that the [protestors] were trespassing…." See Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *10-11 (S.D.N.Y. Feb. 24, 2014). Plaintiff's presence on private property made him subject to arrest for trespass and in the alternative; officers in

---

[1] Plaintiff was also aware that OWS would be targeting corporate entities such as 4NYP on the September 17, 2012 and even attended a meeting where such plans of action were discussed. See Defendants' 56.1 ¶¶10-13.

this case are entitled to qualified immunity. As defendants argued in their moving papers, qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted). Based on the foregoing, plaintiff's false arrest claim must be dismissed.

### PLAINTIFF'S FABRICATION OF EVIDENCE CLAIM IS BASELESS AND LEGALLY INDEFENSIBLE

Any right to a fair trial claim against Captain Iocco fails. First plaintiff has not shown that he suffered a deprivation and Plaintiff's citation to Swartz in order to cover up this defect is unavailing. See Pl's Opp. pg. 17. (citing Swartz v. Insogna, 704 F.3d 105 (2d Cir. 2013)). Swartz, is a case where the 2nd Circuit reversed a dismissal of a malicious prosecution claim. Swartz, 704 F.3d at 112. "In Swartz, the Plaintiff was subject to a criminal complaint for disorderly conduct which remained pending for several years and required three court appearances. Id. at 108." Gem Fin. Serv. v. City of New York, 2014 U.S. Dist. LEXIS 34770, at *34 (E.D.N.Y. Mar. 17, 2014). Here, in contrast, plaintiff was released on his own recognizance ("ROR"); (see Korenbaum Dec. Ex. 19, ECF No. 149-19, pg. 2 (DA Data Sheet noting "ROR"); plaintiff accepted a DAT; had only one court conference to attend. Additionally plaintiff provides no evidence to suggest the court placed any restrictions on him. See Gem, at *34 (distinguishing Swartz and finding no deprivation of liberty where plaintiff was not subject to court restrictions like travel and required to attend one court conference).

Furthermore, plaintiff offers no substantive opposition to defendants' contention that any purported fabrication was not material and was not created by Captain Iocco. As it relates to the materiality prong, plaintiff states Captain Iocco falsely alleged he was *inside* the building -specifically the lobby- of 4NYP at the moment of his arrest. This purported fabrication is not material. Plaintiff ignores that under N.Y. PL§140.05, a person is guilty of trespass when that person knowingly enters/remains unlawfully in or upon premises. Id. The term "premises" means any real property whether it's inside or outside. See N.Y. PL§140.00(1). Courts have found probable cause to arrest

4

individuals associated with OWS for trespass even when they were not found to be "inside" of a building but rather in open space that was privately owned. See Thimmesch v. City of New York, 12 cv 8882 (KBF), 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013) (trespass arrest in Zuccotti Park owned and operated by private owner); see also Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515 (S.D.N.Y. 2014) (same).  Here, while plaintiff disputes being inside of 4NYP, he does not refute that he stood in the Plaza, which is real property owned and maintained by 4NYP. See Anakhu Dec. Ex. L; Korenbaum Dec. Ex. 10, ECF No. 149-10 (Picture provided by plaintiff that shows him standing on 4 NYP property, between pillars, in all black, with hands slightly raised)

Additionally, plaintiff has not provided evidence that Captain Iocco created evidence likely to influence a jury's decision.  As defendants noted in their moving papers, while an officer's purported observations of alleged criminal activity could provide the basis of a fair trial claim (see Garnett v. Undercover Officer C0039, 838 F.3d 265, 268 (2d Cir. 2016)); it cannot form the basis of this claim when plaintiff's arrest was based on information that was relayed to him, as here, by a complaining victim. See Keith v. City of New York, 2014 U.S. Dist. LEXIS 166469 (S.D.N.Y. Dec. 1, 2014). Plaintiff conveniently ignores the fact that just three days after plaintiff's arrest, Security Director, James Klein submitted a supporting affidavit to prosecutors that plaintiff did not have "permission or authority" to be on the premises of 4 NYP. See Anakhu Dec. Ex. O; See also Korenbaum Dec. Ex. 1, ECF No. 149-1, pg. 4. Therefore, the only material aspect is whether plaintiff was on the premise lawfully. Here, the answer is no. Consequently the only evidence created that is likely to influence a jury is the information received from Security Director, James Klein that confirms the accusatory instrument signed by Captain Iocco. Based on the foregoing any denial of right to a fair trial claim must be dismissed.

## PLAINTIFF'S FIRST AMENDMENT RETALIATION THOERY IS WITHOUT MERIT

Plaintiff does not dispute that where a Fourth Amendment seizure is justified then no First Amendment retaliation theory can lie. This is equally true, and plaintiff does not dispute, that qualified immunity also precludes a finding of liability under the First Amendment. See Depew v. City of New York, 15-cv- 3821, ECF No. 31 pg. 8 (September 30, 2016). As set forth above and in defendants moving papers, plaintiff's seizure was justified and accordingly no retaliation theory can remain. As for the substantive prongs of this theory, plaintiff argues that he was engaged in First Amendment expression by filming the police and other individuals as they exited the lobby of 4NYP. First, "owners of private property are…permitted to exclude strangers without First Amendment limitations." See Bogart v. City of New York, 2015 U.S. Dist. LEXIS 11331, *14 (S.D.N.Y. Aug. 25, 2015). Plaintiff was on private property at the time of his arrest so no First Amendment claim can lie. The owners of 4NYP do not allow individuals to filming either outside or inside of their building. See Anakhu Suppl. Dec. Q 105:1-15; 106:11-14. Additionally, plaintiff clearly ignores the decisions in this Circuit that have found that the right to film police activity is not clearly established. See Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134, at *20 (S.D.N.Y. Mar. 31, 2015) (dismissing OWS protestor's right to film First Amendment claim as not clearly established); see also Gonzalez v. City of New York, 2015 U.S. Dist. LEXIS 151810, at *19 (S.D.N.Y. Nov. 9, 2015) (dismissing OWS protestor's right to film First Amendment claim as not clearly established). Plaintiff's citation to other Circuits do not change this analysis. See Mesa v. City of New York, 2013 U.S. Dist. LEXIS 1097, at *74-75 (S.D.N.Y. Jan. 3, 2013) (analyzing decision from other Circuits such as the 1st and 7th on the right to film the police and still concluding that it is not a clearly established right). Plaintiff's reliance on Higginbotham is misplaced. See Higginbotham v. City of New York, 105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y 2015). Unlike plaintiff Higginbotham, whom Judge Castel found to be a "professional journalist" with an expectation of payment for the activities he filmed. Plaintiff here is more comparable to the OWS plaintiffs in both Pluma and Gonzalez where the Courts found the right was not clearly established. Plaintiff Gerskhovich admits he is not employed as a journalist; he does not

6

receive any form of payment for taking pictures at demonstrations; and primarily used the smart phone given to him by his parents to film. See Defendants' 56.1 statement ¶¶58-60[2].

Further, plaintiff's argument that the NYPD instructs its officers that citizens should be allowed to film the police does not change this analysis either. This is because self-imposed regulations or procedures by an agency does not create constitutional rights. See Febres v. City of New York, 238 F.R.D. 377, 389 (S.D.N.Y. 2006) (citing Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (2000)) ("finding that the NYPD Patrol Guide could not give rise to liability under a state statute, primarily because it was not a "duly-enacted body of law or regulation," and stating that, "though some of its provisions are couched in mandatory terms, the Patrol Guide does not prescribe the specific action to be taken in each situation encountered by individual officers, but rather is intended to serve as a guide[.]")); see also Romero v. County of Lake, 60 F.3d 702, 705 (10th Cir. 1995)("violations of [] police procedure generally do not give rise to a 1983 claim")

Additionally, plaintiff argues that the information Captain Iocco received from 4NYP personnel should "be rejected" as it relates to plaintiff's First Amendment claim because the Court must view the evidence in "a light most favorable" to plaintiff. See Pl's Opp. Pg. 15. This is a clear misunderstanding of the qualified immunity doctrine. See Torres v. Dennis, 2013 U.S. Dist. LEXIS 83421, at *12-13 (E.D.N.Y. 2013) ("[A] movant's fact narrative, though not dispositive, remains relevant to the qualified immunity inquiry at the summary judgment stage.") Therefore even though plaintiff denies hearing any orders to leave or denies being in the lobby, plaintiff does not deny that he was on property that was privately owned and maintained by 4 NYP. Thus it was reasonable for Captain Iocco to arrest plaintiff after personally observing him on the property once the Captain was informed by security that individuals such as plaintiff were not welcomed. Finally, plaintiff blatantly denied that he

---

[2] Defendants note that even if this Court were to find that the right to film the police was clearly established; the officers would still be entitled to qualified immunity as thus far three learned jurists in this District have found that it is not clearly established law.

was engaged in any expressive activity on September 17, 2012 and no attempt by his attorney to cure what his true intent was on September 17, 2012 can change that to maintain a First Amendment Claim. See Anakhu Dec. Ex. D 73:10-14. Based on the foregoing, plaintiff's First Amendment claim must be dismissed.

### PLAINTIFF HAS FAILED TO ESTABLISH THE PERSONAL INVOLVEMENT OF CHIEF ANGER.

Although plaintiff attempts to artfully sidestep the incontrovertible evidence in his opposition brief, the fact is he cannot show that Chief Steven Anger was involved in any alleged constitutional violation. Contrary to plaintiff's halfhearted argument that "a jury can reasonably conclude that Anger [] caused Gershkovich's arrest" (see Pl's Opp. Pg. 18) no such jury could reach that conclusion. Plaintiff's initial argument is that Captain Iocco arrested plaintiff in retaliation for photographing the events taking place at 4 NYP. See Pl's Opp. starting at 13. If that were the case, then his argument about Chief Anger's personal involvement fails as this goes against any purported instructions given by this officer. See Defendants' 56.1 ¶45. Furthermore, Captain Iocco makes clear that plaintiff's arrest outside of the building came as a result, inter alia, of plaintiff trespassing on 4NYP property. See Anakhu Dec. Ex. E. 378:14-20.

Defendants have carefully set forth the well tread law that requires personal involvement of each individual defendant to give rise to liability under §1983. In response plaintiff sets forth a bare two paragraphs, merely concluding that Chief Anger is generally liable. This is patently insufficient and in no way addresses the arguments set forth by defendants. Based on the foregoing and defendants moving papers all claims should be dismissed against Chief Anger.

### PLAINTIFF'S PERFUNCTORY ARGUMENTS CONCERNING HIS MUNICIPAL LIABILITY THEORY CANNOT OVERCOME ITS DISMISSAL.

Plaintiff's arguments in support of his Monell claim are nothing more than a haphazard attempt to keep this claim alive. Plaintiff's only theory regarding Monell concerns his unsupported

assumptions that the City of New York fails to train its officers as it relates to Fourth and First Amendment considerations in dealing with "citizens engag(ed) in constitutionally protected sidewalk protests". See Pl's Opp. pg. 20. What is absent, and ultimately fatal to plaintiff's claim, is any evidence that can support his Monell theory. First, plaintiff's entire argument is based on a single belief that the rights of individuals engaged in First Amendment activity during "sidewalk protests", are being violated due to the City's failure to train officers. This theory does not apply to plaintiff or the circumstances in this case because plaintiff himself admits that he was **not** on the sidewalk at the time of his arrest:

> Q. Let me clarify that question. Were you standing on the sidewalk when you were arrested?
>
> A. No.
>
> O. Then where were you standing?
>
> A. I was in the outside space where the door was and the stairwell behind me (indicating).

Plaintiff Gershkovich Deposition transcript, attached to the Anakhu Decl. Ex D. 48:3-13

What is undisputed is that at the time of Plaintiff's arrest he was on property owned and maintained by 4NYP. See Anakhu Decl. Exs L, P. See also Korenbaum Decl. Ex 10 (ECF No. 149-10). It is also without dispute that he was not welcomed on the property as he was neither an invited guest nor a tenant of the building. Therefore to the extent plaintiff suffered any underlying constitutional violation, he has not shown that this violation was sufficiently causally related to his unsupported theory. Likewise any failure to train theory should be dismissed as plaintiff has failed to provide any evidence that would suggest the City was deliberately indifferent to his constitutional rights. Here, plaintiff concedes, and the evidence supports the finding that the City trains its officers in both Fourth and First Amendment principles. See Pl's Opp. pg. 22. (Plaintiff admitting that the NYPD Patrol Guide "addresses the First Amendment" and that the guide also addresses "the offenses of disorderly Conduct and Trespass"). Because plaintiff admits that the City provides training for its officers as it pertains to Fourth and First Amendment considerations, plaintiff must show that the training is inadequate and that

9

the City was deliberately indifferent. "Municipal liability may be premised on a failure to train employees if inadequate training 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" Prince v. County of Nassau, 563 Fed. Appx. 13, 16 (2d Cir. 2014). Here plaintiff merely recites the elements of a failure to train theory and does not provide evidence "tending to support, at least circumstantially, such an inference". Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

Ironically while plaintiff attempts to lambast the City on its purported failure to train officers on the "rights of protestors, []trespass laws, []dispersal orders" and the like, he fails to cite to even one case where the City was found liable for failing to train officers on these issues. Certainly the City cannot be held liable for a failure to train as it relates to these issues where plaintiff has apparently forgotten that Courts in this Circuit have repeatedly found Occupy Wall Street arrests were proper. See Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) (lawful arrest of over 700 protestors based on disorderly conduct); Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. 2016) (same, approx. 100 protestors); See also Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013) (same and trespass); Carpenter v. City of New York, 984 F. Supp. 2d 255 (S.D.N.Y. 2013) (approx. 20 protestors for trespassing in a Citibank); Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515 (S.D.N.Y. 2014) (trespass); Pesola/Allen v. City of New York, 2016 U.S. Dist. LEXIS 42977, at *1 (S.D.N.Y. Mar. 30, 2016) (disorderly conduct); Shamir v. City of New York, 804 F.3d 553 (2d Cir. 2015)(same); See Mediavilla v. City of New York, No. 14 CV 8624-VSB, ECF No. 91(SDNY September 29, 2016)  (inter alia, same); Wiles v. City of New York, 13 CV 02898, (TPG) ECF No. 161(SDNY October 25, 2016) (same); Hessler v. City of New York, No. 13 Civ. 821 (NRB) (SDNY) (See Judgment, dated September 14, 2015, Docket Entry No. 61 verdict in favor of defendants); It is for these reasons and more that plaintiff's Monell claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons defendants respectfully request that the Court grant its motion for summary judgment on all causes of action; deny plaintiff's request for partial summary judgment; deny plaintiff's request to strike 4NYP General Manger, Michael Clarke's affidavit; dismiss plaintiff's Complaint with prejudice; and grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         March 17, 2017

                                          ZACHARY W. CARTER
                                          Corporation Counsel - City of New York
                                          *Attorney for Defendants*
                                          100 Church Street
                                          New York, New York 10007
                                          (212) 356-2323

                         By:    /s/_____
                                 Joy Anakhu
                                 New York City Law Department
                                 Special Federal Litigation Division